IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Joey H. Johnson, # 214306, | ) | C/A No.: 1:11-2754-JMC-SVH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Warden Broad River Correctional | ) | |
| Institution, | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner Joey H. Johnson is an inmate at the Broad River Correctional Institution of the South Carolina Department of Corrections. He filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on Petitioner's motion to stay [Entry #15] and Respondent's return and motion for summary judgment. [Entry #22, #23]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion by February 16, 2012. [Entry #24]. Petitioner filed a response on February 10, 2012. [Entry #27]. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that the motion to stay be denied and that Respondent's motion for summary judgment be granted.

I.    Procedural Background

Petitioner was indicted by the Anderson County grand jury in June 2005 for trafficking in methamphetamine (conspiracy) (greater than 400 grams); two counts of trafficking in methamphetamine (l0-28 grams); and trafficking in methamphetamine (greater than 400 grams) (2005-GS-47-09). [Entry #22-1 at 87-91]. Petitioner was represented by Druanne D. White, Esq., and James Todd Rutherford, Esq. and pled guilty before the Honorable Wyatt T. Saunders on July 20, 2006. [Entry #22-1 at 3-80].   Judge Saunders sentenced Petitioner to an aggregate sentence of fifteen years.   [Entry #22-1 at 76-78].

Petitioner did not appeal from his guilty plea.

Petitioner filed an application for post-conviction relief ("PCR") on December 6, 2006, in which he alleged:

1.    Trial court erred in refusing to dismiss defendant's indictment where SLED agents recorded conversations between defendant and his attorney.

2.    Ineffective assistance of counsel and involuntarily entered guilty plea due to coercion, duress, and inducement.

3.    Guilty plea involuntarily, unknowingly, and unintelligently entered due to counsel's erroneous advice.

4.    Ineffective assistance of counsel in failing to consult, communicate, and investigate possible defenses with applicant.

5.    Applicant did not knowingly; intelligently, and/or voluntarily waive his right to a direct appeal.

6. Ineffective assistance of counsel in failing to investigate mental competency of applicant at time of plea.

7. Ineffective assistance of counsel in failing to adequately consult and communicate with applicant and adequately investigate charged offenses.

[Entry #22-1 at 92-98; #22-2 at 1-18]. A PCR evidentiary hearing was held before the Honorable R. Knox McMahon on July 22, 2008, at which Petitioner and his counsel, Hugh Welborn, Esq. appeared. [Entry #22-2 at 23-76, #22-3 at 1-40]. On September 18, 2008, Judge McMahon entered an order of dismissal. [Entry #22-3 at 41-52]. The record does not reflect Petitioner having filed a Rule 59(e), SCRCP, Motion to Alter or Amend. Petitioner appealed from the denial of PCR in the Supreme Court of South Carolina. [Entry #22-4].

Appellate Defender Kathrine H. Hudgins of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, represented Petitioner on appeal and filed a petition for writ of certiorari in the South Carolina Supreme Court on July 6, 2009. [Entry #22-5]. The petition raised only the following issue: "Was the guilty plea rendered involuntary by the fact that trial counsel promised petitioner that if he pled guilty he would receive special housing consideration within the department of corrections when in fact petitioner could only be housed in one department of corrections facility because of his HIV positive status?" [Entry #22-5 at 3].

On June 9, 2010, the South Carolina Supreme Court filed an order granting certiorari on the single issue Petitioner raised and directed briefing from the parties. [Entry #22-7]. On October 15, 2010, Petitioner filed his brief through counsel and, again, he set

forth the Question Presented as follows: "Was the guilty plea rendered involuntary by the fact that trial counsel promised petitioner that if he pled guilty he would receive special housing consideration within the department of corrections when in fact petitioner could only be housed in one department of corrections facility because of his HIV positive status?" [Entry #22-8 at 4]. The South Carolina Supreme Court filed an order dismissing certiorari as having been improvidently granted on April 25, 2011. [Entry #22-10]. The remittitur was issued on May 13, 2011. [Entry #22-11].

On or about June 10, 2011, Petitioner filed a second PCR application (10-CP-04-01849) in which he raised the following allegation: Ineffective Assistance of Appellate Defender in failing to put forth all issues on original PCR application, as Appellate Defender only preserved one issue that was ruled on by the South Carolina Supreme Court in writ of certiorari. [Entry #22-12].

II.    Discussion

Petitioner filed this federal petition for a writ of habeas corpus on October 7, 2011. [Entry #1].[1] On November 28, 2011, Petitioner filed a Motion to Request Stay and Abeyance, in which he requests that the court stay this habeas petition until final disposition of his second PCR. [Entry #15]. Respondent argues that Petitioner's second PCR application is subject to summary dismissal because it is untimely and impermissibly

---

[1]  The petition was received by the court on October 11, 2011 and docketed on October 12, 2011. However, because Plaintiff is incarcerated, he benefits from the "prison mailbox rule." *Houston v. Lack*, 487 U.S. 266 (1988). Petitioner dated his petition October 7, 2011, which is the date his envelope indicates the petition was deposited in the prison mailing system.

successive.[2]   Respondent contends that all the claims in this habeas petition have been exhausted and that the motion to stay should be denied.   The undersigned agrees.

Respondent cites to *Rhines v. Weber*, 544 U.S. 269 (2005), in support of his argument that the stay should be denied.   In *Rhines,* the United States Supreme Court addressed how mixed petitions containing both exhausted and unexhausted claims should be handled by district courts. The Court noted the interplay between the one-year statute of limitations in the AEDPA and the requirement of *Rose v. Lundy*, 455 U.S. 509 (1982), that courts are to dismiss the entire mixed habeas petition without prejudice in order to effectuate the requirement of total exhaustion. *Rhines*, 544 U.S. at 274-75. In such cases, petitioners who come to federal court with a mixed petition "run the risk of forever losing their opportunity for any federal review [of their claims]" if the district court dismisses the case without prejudice close to or after the limitations period has expired. *Id.* In *Rhines*, the Court noted that some district courts have adopted a procedure of staying the habeas petition and holding it in abeyance while the petitioner returns to state court with his unexhausted claims. *Id.* at 275-76.

The Court cautioned, however, that the practice of staying a federal habeas case while a petitioner returns to state court to exhaust his claims should be used sparingly:

---

[2] The South Carolina Supreme Court has allowed successive PCR applications in limited circumstances, including "when the initial application was filed without the assistance of counsel; when PCR counsel was the same as trial counsel; and when procedural irregularities were so egregious as to result in a denial of due process." *Ivey v. Catoe*, 36 Fed.Appx. 718 (4th Cir. 2002) (internal citations omitted). The "mere fact that PCR counsel was ineffective is not sufficient grounds for a successive PCR application." *Id.*, citing *Aice*, 409 S.E.2d at 394.

Stay and abeyance, if employed too frequently, has the potential to undermine these twin purposes. Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition. . . . For these reasons, stay and abeyance should be available only in limited circumstances. Because grating a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.

*Id*. at 277.

First, the undersigned believes that the holding in *Rhines* is inapplicable, as the instant petition is not a mixed petition of exhausted and unexhausted claims. All of Petitioner's claims raised in his habeas petition have been exhausted for the purpose of federal habeas review. Nevertheless, even applying *Rhines* to the instant case, the undersigned finds that a stay and abeyance is not warranted.

The undersigned rejects the argument that Petitioner's original PCR counsel's failure to raise all seven issues on certiorari constitutes "good cause" under *Rhines*. The ineffective assistance of state habeas counsel cannot excuse procedural default given that there is no Sixth Amendment right to effective assistance of counsel in state habeas proceedings. *Coleman*, 501 U.S. at 752-53 ("There is no constitutional right to an attorney in state post-conviction proceedings. . . . Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings. . . . Coleman

contends that it was his attorney's error that led to the late filing of his state habeas appeal. This error cannot be constitutionally ineffective; therefore Coleman must "bear the risk of attorney error that results in a procedural default") (citations omitted).

Finally, although there may be a remote possibility that the state PCR court will review the claims on the merits in a successive PCR application, even if the PCR court ultimately reviews the claims on the merits, any ruling of the District Court that the claims raised in this habeas petition are without merit would not preclude the state PCR court from reaching a contrary conclusion and granting relief. *See Ivey v. Catoe,* 36 Fed.Appx. 718, 734 (4th Cir. 2002) ("even if the PCR court ultimately reviews the claims on the merits, the denial of the motion for stay would not be erroneous. The ruling of the district court that the claims were without merit in no way precludes the state court from reaching a contrary conclusion and granting relief.").

Therefore, it is recommended that Petitioner's motion to stay be denied.

A.      Federal Habeas Issues

Petitioner now asserts he is entitled to a writ of habeas corpus on the following grounds:

**Ground One:**      Trial court erred in refusing to dismiss defendant's indictment where SLED agents recorded conversations between defendant and his attorney.

**Supporting Facts:** Applicant was housed in the Anderson County Detention Center's segregation unit awaiting trial for the above-stated offenses. During this brief period of incarceration, applicant was afforded the opportunity to use the telephone and frequently invoked his privilege to do so. Applicant made numerous calls to his residence

and to family members and frequently conversed with his attorney of record, Druanne White, Esq. utilizing three way calling. Mrs. White later learned that applicant's telephone conversations were being recorded by request from SLED.

**Ground Two:** Ineffective assistance of counsel and involuntarily entered guilty plea due to coercion and inducement.

**Supporting Facts:** Applicant was charged with offenses listed above with, amongst other co-defendants, his common law wife of several years, Cindy Boggs. Applicant's primary attorney, Mr. Todd Rutherford, Esq. represented only applicant but maintained continuous contact with the attorneys of Boggs during the course of the prosecution. Ultimately, applicant was informed by Mr. Rutherford, that he and common law wife would both get twenty-five (25) years if he did not plead guilty to charged offenses, or that applicant could plead guilty to reduced charges and common law wife would receive minimum three (3) years incarceration.

**Ground Three:** Guilty plea involuntarily, unintelligently, and unknowingly entered due to counsel's erroneous advice.

**Supporting Facts:** Applicant contends that the erroneous advice given to him by his attorney renders his guilty plea unintelligently, unknowingly, and involuntarily entered. Several weeks prior to applicant's plea arraignment Mr. Rutherford (counsel) met with applicant and promised applicant that if applicant pled guilty on July 20th, 2006, applicant would be given special housing arrangements within SCDC. Applicant would be housed close to his hometown, after three (3) years applicant was to be at pre-release per applicant's attorney Mr. Rutherford and Director of SCDC, Jon Ozmint.

**Ground Four:** Ineffective assistance of counsel in failing to consult, communicate, and investigate possible defenses with applicant.

**Supporting Facts:** Counsel met with applicant approximately three times prior to the plea arraignment of applicant. During these brief meetings, applicant asserts counsel's inactions in failing to inform application of possible defenses for charged offenses, specifically the defense of duress and coercion in this case fell below a professional

standard of reasonableness and amounted to prejudicial error in that applicant would have insisted on going to trial had he known of such defenses.

**Ground Five:**       Applicant did not knowingly, intelligently, and/or voluntarily waive his right to a direct appeal.

**Supporting Facts:**   On July 20, 2006, applicant was sentenced in Anderson County pursuant to a plea agreement between applicant and the Attorney General's office. Immediately following the reading, applicant informed trial counsel of his desire to have a direct appeal filed on his behalf as he was not satisfied that his counsel had properly informed him correctly of the expected sentence. Upon inquiry to the South Carolina Commission on Indigent Defense, applicant became aware that counsel had not filed a direct appeal on his behalf, and now contends that that did not knowingly, intelligently, or voluntarily waive his right to a direct appeal. Applicant also sent attorney of record Mr. Rutherford (counsel) a personal letter and had applicant's family contact Mr. Rutherford's office concerning his desire of a direct appeal.

**Ground Six:**       Ineffective assistance of counsel in failing to investigate mental competency of applicant at time of plea.

**Supporting Facts:** Applicant contends that had counsel investigated into the mental competency of his client, which was made aware to counsel prior to time of the plea arraignment, then he would have been aware of several disturbing factors in that regards. Applicant, who has a long history well documented of mental illness, has been hospitalized several times for bi-polar disease, and has been on xanax prior to his incarceration. The underlying effects of the combination of the drugs taken and applicant's mental history grossly affected his judgment and his decision making abilities. Thus, it is the contention of the applicant that counsel rendered ineffective assistance in failing to investigate and require applicant to undergo a mental examination prior to pleading guilty.

**Ground Seven:**      Ineffective assistance of counsel in failing to adequately consult and communicate with applicant and adequately investigate charged offenses.

> **Supporting Facts:** Applicant contends that counsel's deficient performance in failing to make his reasonable investigations into his case and failing to adequately communicate with him prejudiced applicant, in that adequate investigation and communication would have prevented applicant from pleading guilty and instead insist on going to trial.

[Entry #1 at 5-17].

B.    Standard for Summary Judgment

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon

mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e). Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

C.      Habeas Corpus Standard of Review

1.      Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly

established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410. Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2.    Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id*. The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a.    Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

(A)     the applicant has exhausted the remedies available in the courts of the State; or

(B)     (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR.   State law requires that all grounds be stated in the direct appeal or PCR application.

Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State,* 653 S.E.2d 266 (S.C. 2007).[3] Furthermore, strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, regardless of whether the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983)*; Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).

---

[3]In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

b.    Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.   As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

3.      Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a

"fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495−96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

4.      Ineffective Assistance of Counsel Claims

To prevail on an ineffective assistance of counsel claim, a petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1985). Petitioner bears the burden of proving an error and prejudice in his ineffective assistance of counsel claim. *Id.*

D.      Analysis

1.      Procedurally-Barred Grounds

As an initial matter, Respondent contends that all of Petitioner's Grounds, except for Ground Three, are procedurally-barred to the extent that they were not raised in a direct appeal or PCR appeal. The undersigned agrees that the procedural bar applies to all the Grounds except for Ground Three.

Petitioner alleges various claims of ineffective assistance of counsel in Grounds Two, Four, Six, and Seven. In Ground One, Petitioner alleges the trial court erred in refusing to dismiss his indictment where SLED agents recorded conversations between him and his attorney. In Ground Five, Petitioner alleges he did not knowingly waive his right to a direct appeal.

Petitioner did not file a direct appeal, and these grounds were not raised in his PCR appeal. The sole issue in his PCR appeal was whether his guilty plea was involuntary. Therefore, to the extent that Grounds One, Two, Four, Five, Six, and Seven were not raised in Petitioner's direct or PCR appeal, they were not fairly presented to the South Carolina appellate courts and are procedurally-barred from federal habeas review. *See Coleman*, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review).

2.    Cause and Prejudice

Petitioner has not shown sufficient cause and prejudice to excuse the default of these Grounds. In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Petitioner has failed to meet this burden. Thus, they are procedurally barred from consideration by

this court and should be dismissed. *Id.*; *see* 28 U.S.C. § 2254; *Rodriguez v. Young*, 906 F.2d 1153, 1159 (7th Cir. 1990) ("Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal Court."); *Mazzell v. Evatt*, 88 F.3d 263, 269 (4th Cir. 1996) (In order to show prejudice a Petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.); *Wainwright,* 433 U.S. at 88–91; *Murray*, 477 U.S. at 496; *Rodriguez*, 906 F.2d at 1159 (a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent") (*citing Murray*); *Sawyer v. Whitley*, 505 U.S. 333, 348 (1992); *Bolender v. Singletary*, 898 F. Supp. 876, 881 (S.D. Fla. 1995).

The existence of cause must ordinarily turn on whether the prisoner can show some objective factor external to the defense impeded counsel's or his efforts to comply with the State's procedural rule. *Murray*, 477 U.S. at 488. Petitioner fails to articulate cause for procedurally defaulting on Grounds One, Two, Four, Five, Six, and Seven. Petitioner had a guilty plea in which he raised no objection, had the opportunity for a direct appeal, a PCR hearing, and an appeal from the PCR in which to raise these issues. However, he failed to raise them, raise them properly, or preserve the issues for habeas review. Petitioner cannot establish cause and prejudice because he has abandoned the opportunities to preserve these issues.

In the alternative, Petitioner must show a miscarriage of justice. In order to demonstrate a miscarriage of justice, Petitioner must show he is actually innocent. Actual

innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Petitioner cannot establish that the errors he complains of probably resulted in the conviction of an innocent person. *Sclup v. Delo*, 513 U.S. 298, 327 (1995). In order to pass through the actual-innocence gateway, a petitioner's case must be "truly extraordinary." *Id.* The court's review of the record does not support a showing of actual innocence.

During the guilty plea colloquy, the Solicitor recited the following facts, which Petitioner conceded in his guilty plea colloquy were accurate, to wit: that Petitioner participated in a conspiracy to distribute drugs and on two occasions, sold to an undercover agent. The guilty plea colloquy reflects that Petitioner admitted he committed the crimes of conspiracy and trafficking methamphetamine in an amount greater than 28, but less than 100 grams; and on two different occasions participated in the crime of trafficking methamphetamine in an amount greater than 10, but less than 28 grams. In light of the foregoing, Petitioner cannot show actual innocence, and therefore, the procedural bars apply as to Grounds One, Two, Four, Five, Six, and Seven.

3.    Merits Review

In his remaining claim in Ground Three, Petitioner alleges his guilty plea was involuntarily, unintelligently, and unknowingly entered due to counsel's erroneous advice that he "would be given special housing arrangements within SCDC." [Entry #1 at 8]. Specifically, he claims that counsel promised him that if he plead "guilty on July 20th 2006, [he] would be given special housing arrangements within SCDC. [He] would be housed close to his hometown, [and] after three (3) years [he] was to be at pre-release" facility per his "attorney Mr. Rutherford and Director of S.C.D.C. Jon Ozmint." *Id.* Addressing Petitioner's allegations as to this claim, the PCR Court found as follows:

> This Court finds that the allegation that counsel was ineffective because the Applicant relied upon unfulfilled promises from counsel that he would be housed in a prison close to home if he pled guilty is without merit. This Court finds that the Applicant is not credible concerning his testimony that he relied on the housing promise when he pled guilty. This Court finds that the Applicant failed to show that but for counsel's promise concerning housing arrangements[,] he would not have pled guilty. Besides affirming at the guilty plea that no one enticed or promised him anything to plead guilty, confinement arrangement promises were not mentioned during his guilty plea, and the Applicant also signed a plea agreement which did not mention any promises concerning where the Applicant will be housed. Also, although the Applicant alleged that a promise concerning housing arrangements was a factor in his guilty plea; nevertheless, the Applicant failed to show that "but for" the housing promise, he would not have entered the guilty plea. The housing arrangement was not the only factor. The Applicant received a fifteen-year concurrent sentence as opposed to the maximum sentence, and the Applicant pled to the lesser-included offenses for some of the charges. This Court finds that the Applicant received the benefit of his bargain. Therefore, this Court dismisses and denies this allegation.

> Also, the Applicant's allegation concerning the condition of confinement is an administrative matter that cannot be raised in a post-conviction relief application, Al-Shabazz v. State, 338 S.C. 354, 527 S.E.2d 742 (2000). To ensure the health of the prison population and to ensure that prisoners with

HIV receive the proper medical treatment, prisoners with HIV can only be housed at designated HIV dormitories and not at any prison facility. Because of the special medical needs of the Applicant, when SCDC became aware of his illness, they were justified in not following through with any housing arrangements. This Court finds that the proper avenue for review is under the Administrative Procedures Act (APA). Id. Therefore, this Court dismisses and denies this allegation because this allegation cannot be raised in a post-conviction relief application.

[Entry #22-3 at 49-50].

The undersigned can find no basis in the record on which to overturn the state court decision. The record reflects that the Petitioner voluntarily and knowingly entered his guilty plea in open court and no agreement regarding housing considerations was ever placed on the record or made part of any plea agreement. At his guilty plea, Petitioner stated that he understood he faced a potential punishment of 75 years imprisonment; that no one had forced or coerced him in any way to induce the guilty plea; affirmed that he was pleading guilty freely and voluntary and that he had personally made the decision to do so, admitting "I've done wrong." After the state recommended a sentence of fifteen years concurrent on lesser-included charges, the prosecutor stated that there were other, unrelated Anderson County charges that would also be run concurrently as a result of the plea. Petitioner affirmed that, other than the state's recommendation, there were no offers or promises were made to him for his plea, and in response to the plea court's question about who made the final decision for him to plead guilty, Petitioner replied, "I've made the final decision, Your Honor, I have let my family down."

Petitioner has not provided any evidence that he did not intend to plead guilty to the charges, under oath to the presiding judge, without objection in open court. Statements of

the accused that facially demonstrate the plea's validity are conclusive absent compelling reasons why they should not be, such as ineffective assistance of counsel. *Via v Superintendent, Powhatan Correctional Center*, 643 F.2d 167, 171 (4th Cir. 1981). Petitioner has provided no evidence to show ineffective assistance of counsel in his case. Rather, the record shows that Petitioner had been advised by trial counsel, and that the consequences of his plea were fully explained to him by the court. The record also clearly shows that Petitioner was given every opportunity to change his mind, and he denied he had been coerced or forced to act in any manner concerning his plea. Hence, the record shows that Petitioner chose to enter a plea of guilty, and did so freely and voluntarily. *Little v. Allsbrook*, 731 F.2d 238 (4th Cir. 1984); *U.S. v. Futeral*, 539 F.2d 329 (4th Cir. 1976).

Additionally, a written plea agreement was executed in this case in which Petitioner acknowledged pleading to lesser included charges of the originally indicted offenses, and the state represented it would recommend concurrent sentences totaling fifteen years. The plea agreement notes that "The parties hereby agree that this Plea Agreement supersedes all prior promises, representations and statements of the parties; that this Agreement may be modified only in writing signed by all parties; and that any and all other promises, representations and statements, whether made prior to or after this Agreement, are null and void."

In light of the foregoing, it was not objectively unreasonable under § 2254(d)(1) for the PCR judge to reject Petitioner's claim that the housing considerations were not central

to his decision to enter a guilty plea. As such, there is not a reasonable probability that he would not have pled.

In sum, Petitioner has failed to show the PCR court unreasonably applied United States Supreme Court precedent in deciding this issue. Additionally, Petitioner has failed to show by clear and convincing evidence the PCR court reached an unreasonable factual determination of this issue given the evidence and record before it. *Evans v. Smith*, 220 F.3d 306, 312 (4th Cir. 2000) (federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding); *Williams v. Taylor*, 529 U.S. 420 (2000); *Bell v. Jarvis*, 236 F.3d 149, 157-158 (4th Cir. 2000); 28 U.S.C. § 2254(e)(1) (determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence). Therefore, Petitioner has failed to overcome the deferential standard of review accorded the state PCR court's determination of this issue. As a result, Petitioner has failed to show he is entitled to federal habeas corpus relief.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that the motion to stay [Entry #15] be denied and that Respondent's motion for summary judgment [Entry #23] be granted.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

May 31, 2012                                    Shiva V. Hodges
Columbia, South Carolina                        United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).